**FILED**

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

NOV 1 9 2008

NANCY MAYER WHITTINGTON, CLERK
U.S. DISTRICT COURT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | |
| v. | : | Criminal No. 02-388 |
| | : | (ESH) |
| JUAN CARLOS SIERRA-RAMIREZ, | : | **(UNDER SEAL)** |
| Defendant. | : | |

UNSEALED

<u>STATEMENT OF FACTS IN SUPPORT OF
DEFENDANT'S PLEA OF GUILTY</u>

If this case had proceeded to trial, the government would have been able to prove, beyond a reasonable doubt, the following statement of facts, which the parties now rely on in support of defendant's plea of guilty:

***Autodefensas Unidas de Colombia* and Defendants' Participation**

1. In approximately 1997, the *Autodefensas Unidas de Colombia* ("AUC") began as a right-wing paramilitary group operating in Colombia. The stated objective of the AUC was to defeat the *Fuerzas Armadas Revolucionarias de Colombia* ("FARC") and *Ejército de Liberación Nacional* ("ELN") left-wing rebel guerilla groups that controlled large portions of Colombia. The AUC primarily financed its military operations against the FARC and ELN and enriched its leaders by producing, selling, and distributing cocaine. The AUC was structured as a military organization with approximately 30,000 armed soldiers organized into blocks or regions with commanders for each area. Ultimately, the AUC evolved into a narco-terrorist organization to further



1

its political objectives.

2. On September 4, 2002 the commanders of the "former" AUC met for several days and the AUC was reformed. Co-defendant Carlos Castano-Gil ("Castano"), defendant Salvatore Mancuso-Gomez ("Mancuso"), Ramon Isaza and Vincente Castano were installed as the leaders of the "new" AUC. The organization was structured as follows[1]:



---

[1] This organizational chart was obtained from the AUC web site on the internet.

3. The conspiracy in this case involved the importation of cocaine into the United States by AUC leaders Castano and co-defendant Mancuso and AUC member, Defendant Juan Carlos Sierra-Ramirez ("Sierra-Ramirez"). Castano was the leader and director of operations for the drug trafficking organization. The AUC established cocaine prices and used the AUC military forces to protect cocaine laboratories, maintain cocaine base markets, mediate disputes between drug distributors, and protect drug trafficking operations.  The AUC also taxed the participants in the cocaine production and distribution process.

4. Co-defendant Mancuso was a high ranking member of the organization and used his position in the AUC to manage the operations of the drug trafficking organization including production, distribution, and transportation operations. In addition, Mancuso was the leader of an AUC controlled area in Colombia called "Cordoba".  The vast majority of the cocaine produced in the Cordoba area was transported to the coastal area(s) of Colombia and ultimately smuggled into the United States.

5. Sierra-Ramirez was the organizer of large transportaion operations for AUC members which involved worldwide shipment of cocaine by aircraft, freighters and speed boats.  He directly coordinated two large shipments of cocaine destine for Europe that were seized by law enforcement authorities.

6. More specifically, the evidence in this case would establish that cocaine base was sold and cocaine was produced in laboratories controlled and protected by the AUC troops under the direction and control of co-defendants Castano and Mancuso. Cocaine sold or distributed by the AUC was transported under the security of AUC troops to the coast of Colombia and loaded onto ships or aircraft for transport to the United States and Europe. "Go-fast" boats -- small vessels rigged with extra motors and fuel -- were used to transport the cocaine from Colombia to trans-shipment points in Central America, Jamaica, Haiti, and the Dominican Republic for import to various regions along the borders of the United States.

7. The Defendant organized the transportation of cocaine for AUC members by airplane from Colombia to Guatemala and Mexico knowing that the ultimate destination for the cocaine was the United States. In addition, the Defendant organized the "go-fast" boats to transport cocaine from the north coast of Colombia to areas on the coast of Honduras and Mexico knowing that the ultimate destination for the cocaine was the United States.

8. The Defendant admits that AUC troops would protect these shipments of cocaine with firearms.

9. The Defendant admits that he was personally responsible for the transportation of well over 150 kilograms of cocaine from Colombia knowing that the ultimate destination of the cocaine was

the United States.

10. Co-defendant and AUC leader Carlos Castano admitted on live Colombian television when interviewed by reporter Dario Arizmendi that the AUC taxed cocaine producers/suppliers to support the "Colombian conflict". In addition, when interviewed by RCN News on August 9, 2000, Castano again noted the significant funds the AUC collect to support its Northern Block operations by taxing Colombian drug traffickers.

Paul M. O'Brien
Chief
Narcotics and Dangerous Drug Section
Criminal Division
United States Department of Justice

By: _____          11-19-08
    Robert A. Spelke                    Date
    Robert Raymond
    Trial Attorney
    Narcotics and Dangerous Drug Section
    U.S. Department of Justice

## DEFENDANT'S ACCEPTANCE

      I have had translated into Spanish and read the forgoing five (5) pages of the Statement of Facts and have discussed it with my attorneys, Manuel J. Retureta, Esquire and Ronald Earnest, Esquire. I fully understand this document and agree without reservation that the facts are accurate and correct. I do this voluntarily and of my own free will, intending to be legally bound. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this factual proffer fully.

      I reaffirm that absolutely no promises, agreements, understandings, or conditions have been made or entered into in connection with my decision to plead guilty except those set forth in the signed plea agreement. I am satisfied with the legal services provided by my attorneys in connection with this plea agreement and matters related to it.

Date: 11-19-2008

                                      Juan Carlos Sierra-Ramirez
                                      Defendant

Date: 11-19-2008

                                      Manuel J. Retureta, Esquire
                                      Ronald Earnest, Esquire
                                      Attorneys for Juan Carlos
                                        Sierra-Ramirez