**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | **:** | |
| | **:** | |
| **v.** | **:** | **Criminal No. 02-388-02 (ESH)** |
| | **:** | |
| | **:** | |
| **SALVATORE MANCUSO-GOMEZ** | **:** | |
|   a/k/a "El Mono," | **:** | |
|   a/k/a "Santander Lozada," | **:** | |
|     Defendant. | **:** | |
| | **:** | |

## GOVERNMENT'S MEMORANDUM OF RELEVANT CASES

Comes the United States, by and through its attorneys, and submits this additional information in aid of the sentencing of defendant Salvatore Mancuso-Gomez ("Mancuso" or "the defendant"). This memorandum summarizes the most relevant cases which could arguably be compared to the instant case.

## I.   Introduction[1]

The defendant, Salvatore Mancuso, formed his own para-military force in about 1995, and, after two years, combined his armed force with para-military forces[2] organized and led by brothers Carlos and Vicente Castaño, to form what became known as the AUC. Carlos Castaño was recognized as the primary leader of the AUC, with Vicente Castaño and the defendant serving the next most significant leadership roles under Carlos Castaño. From 1997 through the end of 2002, the military forces led by the Castaños and the defendant grew significantly more larger and

---

[1]  The government incorporates by reference the prior factual proffers in its two sentencing pleadings, the 5K1.1 motion and the supplement thereto.

[2]  Para-military forces generally refer to the illegal armed forces in Colombia created to fight the Colombian guerrillas, who were also illegally formed armed groups. Guerrillas were most commonly members of the FARC, which was initially dedicated to overthrowing the existing Colombian government. The guerillas eventually oppressed the civilian population and profited from drug trafficking, among other illegal activity.

more powerful, and came to control most of the northern part of Colombia, including the key drug

trafficking areas along the north coast.

As the AUC grew, its military forces were divided into "bloques" or fronts. Much like an

army division of 30,000 personnel might be divided into six fighting brigades of 5000 each, the

AUC (similar to a division) divided its forces into bloques (similar to brigades). Each bloque

operated in and controlled a designated area of north Colombia. Carlos Castaño and the defendant

had overall control of the bloques, but the defendant exercised more direct control over several of

the bloques. The bloque commanders - which included Rodrigo Tovar-Pupo (alias "Jorge 40"),

Hernan Giraldo-Serna, Carlos Jimenez-Naranjo (alias "Macaco"), Ramiro Vanoy-Murillo (alias

"Cuco"), and Miguel Mejia-Munera - reported directly to the defendant.    The defendant managed

the bloque commanders and required them to account to him. For example, these bloque

commanders reported drug trafficking activity to the defendant, including the collection of drug

taxes, and the defendant resolved conflicts between the bloques.    When Tovar-Pupo moved to

take the territory of fellow bloque commander Giraldo-Serna, it was the defendant who, because of

his leadership role and authority, resolved the armed conflict between Tovar-Pupo's bloque and

Giraldo-Serna's bloque, effectively awarding control of Giraldo-Serna's territory and its drug

riches to Tovar-Pupo.

Both Castaño brothers were murdered in Colombia before they could be extradited to the

United States, so the highest ranking member of the AUC extradited to the United States was the

defendant. However, some of the defendant's subordinate commanders were extradited to the

United States, along with key members of the AUC staff.

## II.   Comparable Cases

The defendant was the highest ranking AUC leader to be extradited to the United States, and as a member of the ruling committee of the AUC, he has no peer in the United States. In that sense, there is no AUC leader comparable to him who was extradited to the United States. However, the defendant was an AUC commander who commanded a sizeable illegal armed force that controlled a large, strategic area of northern Colombia, and therefore controlled the drug trafficking activity in that area, from coca farming to lab production to transportation and distribution.   That is, the defendant controlled drug trafficking activity in his bloque and then himself became a drug trafficker.   Similarly, the following AUC commanders also commanded a sizeable armed force which controlled territory and dominated drug trafficking activity in their territory, and then themselves became drug traffickers: Tovar-Pupo, Giraldo-Serna, Mejia-Munera, Jimenez-Naranjo, and Vanoy-Murillo.[3]   Another relevant example would include the case of Diego Murillo-Bejarno (alias "Don Berna"), who played key leadership role in the AUC but did not command armed forces. Murillo-Bejarno (alias "Don Berna") was a powerful "inspector general" for the high level AUC leadership, and exercised significant influence over the drug trafficking activity of the AUC.

Tovar-Pupo, Giraldo-Serna, and Mejia-Munera have not been sentenced. The Tovar-Pupo and Giraldo-Serna cases are before the Honorable U.S. District Court Judge Reggie Walton[4], while

---

[3]   Colombian authorities believe that Mejia-Munera and Vanoy-Murillo were drug traffickers who "purchased" control of an AUC bloque to maximize drug profits and take advantage of demobilization benefits.   However, for purposes of this memorandum, they are treated as subordinate AUC commanders.

[4]   District court judges in the District of Columbia, including Judge Walton, have sentenced several AUC-connected defendants, but none of them were comparable to the defendant or even to the relevant defendants discussed in this memorandum. However, the government can provide to the District Court an *ex parte* and under seal filing concerning those sentencings. The government would note that as of the filing of this memorandum, none of those sentences were greater than 144 months, due in part because of their subordinate status and cooperation.

Mejia-Munera's case is before the Honorable U.S. District Court Judge John D. Bates.

Jimenez-Naranjo was the commander of the Bloque Central Bolivar, commanding an estimated 7,000 armed combatants. He was sentenced on May 9, 2011, to 396 months confinement after guilty pleas to drug trafficking, engaging in drug trafficking with the intent to provide something of value to a terrorist organization, and to violating the maritime statute by transporting cocaine using maritime vessels subject to the jurisdiction of the United States (Case Number 07-20794, SDFL).[5]  Vanoy-Murillo pleaded guilty to drug trafficking and on October 15, 2008, was sentenced to 293 months confinement (Case Number 99-06153, SDFL). He was the commander of the Bloque Mineros which operated in Antioquia and Cordoba.[6]   On April 22, 2009, Murillo-Bejarno was sentenced to 375 months confinement and a $4 million fine for drug trafficking (Case Number 03-01188, SDNY).[7]   His plea agreement included a stipulated sentencing guidelines range of 324 months to 405 months. Other AUC commanders, such as Julian Bolivar, Ramon Isaza (alias "El Aleman"), and brothers Fredy Rendon-Herrera and Daniel Rendon-Herrera (alias "Don Mario"), though indicted in the United States for drug trafficking, are still pending extradition to the United States. Julian Bolivar was the former leader of the Central Bolivar Bloque.

The District Court is well aware of the case involving the co-defendant, Juan Carlos Sierra-Ramirez (alias "Tuso"). Though Sierra-Ramirez was considered to be a member of the AUC, it has been stated that he "purchased" his way into the AUC to receive the benefits of AUC membership. Regardless, Sierra-Ramirez was primarily a true drug trafficker who worked with and

---

[5]  Jimenez-Naranjo pleaded guilty in the District of Columbia to the first two offenses noted. His two cases were consolidated for sentencing in the SDFL.

[6]  The sentences for Jimenez-Naranjo and Vanoy-Murillo did not involve 5K1.1 or 3553(e).

[7]  Likewise, Murillo-Bejarno's sentence did not involve 5K1.1 or 3553(e).

for the AUC leadership. Though Sierra-Ramirez was a major trafficker in Colombia, he did not command armed forces in Colombia, or control territory in Colombia, nor did he have any real leadership role in the AUC. Further, the District Court is also well aware of the unique reasons and circumstances, not present in this case, supporting the ultimate sentence received by Sierra-Ramirez, which are other factors that set Sierra-Ramirez apart from the defendant.

## III.   Conclusion

For the reasons outlined in its previously filed sentencing memorandum, the government believes that, based on the entirety of the record in this case and the factors set forth in Section 3553(a), including the additional information set out above, a sentence of no less than 263 months of confinement is a reasonable and appropriate sentence, given the unparalleled relevant drug trafficking conduct present in this case.

Respectfully submitted,

Arthur Wyatt
Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

*Paul W. Laymon*

By: Paul W. Laymon, Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division
U.S. Department of Justice
paul.laymon@usdoj.gov
202-330-1400

## CERTIFICATE OF SERVICE

A copy of this motion was mailed, via electronic mail, to counsel for defendant, Joaquin Perez, 6780 Coral Way, Miami, Florida, on March 23, 2015.

_____/s/ _Paul Laymon_____
Paul W. Laymon