# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | Criminal No. 02-388-02 (ESH) |
| SALVATORE MANCUSO GOMEZ | Filed Under Seal |

**REPLY TO THE GOVERNMENT'S MEMORANDUM OF RELEVANT CASES**

**COMES NOW DEFENDANT, Salvatore Mancuso Gomez,** by and through undersigned counsel and respectfully submits this Reply to Government's Memorandum of Relevant Cases. ECF #123.

### Brief Reply To Government Memorandum

The government reply fails to offer the Court with a broad spectrum of cases upon which to evaluate potential sentence disparities. 18 U.S.C. § 3553 (a) (6). In this reply pleading, Mr. Mancuso respectfully presents a complete picture of cases and similarly situated defendants. This presentation undercuts the government's proposed sentence recommendation and adds credence to Mr. Mancuso's argument for mitigation at sentencing.

### Sentence Comparisons & Avoidance of Sentence Disparities

Although the United States Sentencing Guidelines have been rendered advisory, district courts are still required to consider the Guidelines as well as factors set forth in 18 U.S.C. § 3553 (a) when imposing sentences. *See United States v. Booker*, 543 U.S. 220 (2005); *see also*, *United States v. Gall*, 552 U.S. 38, 48 (2007). Within § 3553 (a) is specific statutory guidance regarding the need for courts to analyze other sentences and avoid disparities; specifically, § 3553 (a) (6) provides:

> (a) **Factors to be considered in imposing a sentence.** – The court shall impose a sentence sufficient, but not greater than necessary to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider --
>
>> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct…

By its plain language, § 3553 (a) (6) mandates that district courts consider sentences imposed upon similarly situated defendants in order to ensure increased uniformity in sentencing and deter unwarranted disparity. At its very core, the goal of § 3553 (a) (6) is to ensure that every criminal defendant is treated fairly and justly. Moreover, by requiring district courts to consider sentences imposed upon similarly situated defendants, § 3553 (a) (6) ensures that the power to determine appropriate sentences for criminal defendants is not left to a prosecutor, but rather remains squarely within the province of district court judges.

The types of sentences to be considered under § 3553 (a) (6) are those imposed upon a *similarly situated* defendants; specifically, individuals (1) who were convicted of a similar crime; (2) who participated in similar, relevant conduct; and (3) who possessed a similar criminal history category. *See United States v. Colwell*, 304 Fed.Appx. 885 (D.C. Cir. 2008); *see also, United States v. Davis-Bey*, 2010 WL 1929764 (8th Cir. 2010). In Mr. Mancuso's case, for an appropriate comparison to be made, a similarly situated defendant would also be an individual who accepted responsibility, cooperated and provided law enforcement and prosecutors in the United States and Colombia *substantial assistance*.

As the Court of Appeals for the District of Columbia Circuit noted in the *Colwell* case, a review of the sentencing transcripts and memoranda of other criminal defendants provides a defendant with the information necessary to determine whether such other defendants are, in fact, similarly situated in order to make the appropriate arguments at sentencing. *Id.* The Supreme Court echoed the need for review of other defendants sentencing materials when it stated that in

2

order to avoid "'unwarranted sentence disparities' within the meaning of § 3553 (a) (6), the proper solution is for district courts to take account of sentencing practices in other courts." *United States v. Kimbrough*, 552 U.S. 85, 88 (2007).

When a district court is not provided with information regarding the sentences imposed upon similarly situated defendants for its consideration, it is impossible for it to appropriately and properly apply § 3553 (a) (6). As the Court of Appeals for the Seventh Circuit recently recognized, a district court cannot conduct a full "subsection (a) (6) analysis" without evidence of sentences received by other defendants "with similar records found guilty of similar conduct." *United States v. England*, 2010 WL 1791411, p.4 (7th Cir. 2010). Such an analysis would empower a court to identify reasons for any potential disparity. *United States v. Ausburn,* 502 F.3d 313 (3rd Cir. 2007). Therefore, Mr. Mancuso respectfully asks this Court to take into consideration other similarly situated defendants, their charges, their relevant conduct, their acceptance – or not – of charges by trial or plea agreement, and their effort to cooperate with law enforcement and prosecutors.

### I. CO-DEFENDANT SIERRA-RAMIREZ

*United States v. Juan Carlos Sierra Ramirez*, **02-CR-388 (ESH) (DC):**

As the Court is well aware, this is Mr. Mancuso´s co-defendant and was the leader and commander of the narcotics operations for the AUC. Co-defendant Sierra organized large-scale drug transport operations and was responsible for the importation of over 80-tons of cocaine into United States for 5 AUC "Bloques" including: Cacique Nutibara, Metro, Héroes de Tolova, Pacifico, and Héroes de Granada. The drug shipments involved worldwide shipment of cocaine by aircraft and boat. The cocaine traveled from Colombia to Guatemala and Mexico with the ultimate destination being the United States. In short, co-defendant Sierra personally directed the cocaine transportation arm of the AUC and funneled hundreds of thousands of kilograms of cocaine into the United States. He served approximately 7-years for his crimes.

3

The 7-year sentence was attained after an initial sentence and a subsequent sentence reduction. Upon information and belief, co-defendant Sierra pleaded guilty and began his sentence calculation at a Level 39 with a potential sentence range of 262-months. Mr. Mancuso respectfully asks the Court to consider that co-defendant Sierra's sentence reduction from 262-months to the final 84-months amounted to a percentage reduction of approximately 68%. Such a reduction is appropriate and just – as it was for co-defendant Sierra – so should it be for Mr. Mancuso.

## II. AUC COMMANDERS ARRIVING IN MAY 2008 THAT *DID NOT COOPERATE*

**\* *United States v. Ramiro "Cuco" Vanoy*, 99-6135 (KMM)(SDFL):**

Defendant Vanoy was one of the founding members of the AUC and founded the "El Bloque Minero." During the period of 1994-2006, defendant Vanoy was responsible for the transit of over 200,000 kilos of cocaine with intent to import to the United States. The government permitted defendant Vanoy to plead to a Level 38, Aggravating Role +3, and Acceptance of Responsibility -3. The resulting Offense Level of 38 yielded a Guideline Range of 235-293. On October 15, 2008, he was sentenced to 293-months confinement.

**\* *United States v. Javier "Gordo" Lindo,* 99-6133 (KMM)(SDFL):**

Defendant Lindo was a drug-trafficker turned paramilitary. He was responsible for the purchase of 8000 AK-47s that were smuggled to Colombia from Bulgaria. The government permitted defendant Lindo to plead to a Level 38, Aggravating Role +2, and Acceptance of Responsibility -3. The resulting Offense Level of 37 yielded a Guideline Range of 210-262.

*(\* Both cases above, involving defendants Vanoy and Lindo, were prosecuted by Deputy Assistant in charge of Narcotics for the Southern District of Florida AUSA Art Wyatt. On October 8, 2008, the government recommended a sentence at the the low-end of the guideline range. Mr. Wyatt is now Chief of the Narcotics and Dangerous Drug Section of the Department of Justice. Mr. Wyatt is currently supervising the prosecution of Mr. Mancuso.)*

***United States v. Carlos Mario Jimenez Naranjo aka "Macaco,"* 07-cr-20794 (SDFL), 05-cr-235 (RMC)(DC):**

Defendant Jimenez-Naranjo was an AUC commander leading the "Bloque Central

4

Bolivar." At his plea hearing, defendant Jimenez Naranjo was described by the government prosecutors as "one of the principle leaders of a Colombian paramilitary and drug trafficking organization known as the Autodefensas Unidas de Colombia…" Case 07-cr-20794 (JAL), ECF Doc. 367, Plea Transcript p.10:12-16. Jimenez Naranjo's activity spanned back in time to the "mid 1990s through 2007" and he "controlled cocaine production and distribution, maritime seaports, and clandestine air strips in vast areas of Colombia through an army of several thousand men: *Id,* Transcript p.12:6-13.

Unlike Mr. Mancuso who abstained from criminal activity after his surrender, defendant Jimenez-Naranjo, while incarcerated, … "used codefendant Sanchez-Jimenez, unindicted co-conspirator Hector Duque Ceballos, also known as "Monoteto", and others, to continue managing the organization's drug trafficking operations. Sanchez-Jimenez and Duque Ceballos visited Jimenez Naranjo regularly at various Colombian jail including Santa de la Lita, La Ceja and Itagui, in order to keep him apprised of the organization's drug trafficking operations and profits and to receive direction from Jimenez Naranjo regarding the same." Transcript p: 12 19-25, p13:1-2.

Defendant Jimenez Naranjo, once targeted by law enforcement and prosecutors, was quickly classified as not only a large-scale drug trafficker, but also a leader of the AUC and subject to U.S. narco-terror laws. In 2007, a superseding indictment before the Honorable Rosemary Collyer in the District of Columbia formally charged Jimenez Naranjo with aiding a terrorist organization. After guilty pleas to both D.C. and Florida cases, he was sentenced on May 9, 2011, to 396-months concurrent periods of confinement to both the Miami and D.C. The conduct detailed in his pleas encompassed drug trafficking, drug trafficking with the intent to provide something of value to a terrorist organization, and violating the maritime statute by transporting cocaine using maritime vessels subject to the jurisdiction of the United States.

### *United States v. Diego Murillo "Don Berna" Bejarano,* 03-cr-01188 (RMB)(SDNY):

Labeled by the United States as the "leader" of the AUC, defendant Bejarano was sentenced to 375-months. In a press release that issued at the time he entered his plea, the Southern District of New York described Bejarano as follows:

> MURILLO-BEJARANO held the title of Inspector General of the AUC, ***but was the de facto leader of the organization***, in charge of its narcotics-trafficking activities, including all of its cocaine transportation and

5

financial operations. MURILLO BEJARANO maintained his power in the
AUC in part from the proceeds of his drug-trafficking activities.

(Emphasis added.) Press Release, June 17, 2008, "LEADER OF COLOMBIAN TERRORIST ORGANIZATION AUC PLEADS GUILTY TO NARCOTICS TRAFFICKING CHARGES," U.S. Attorney for the Southern District of New York. Available at: http://www.justice.gov/usao/nys/ pressreleases/June08/murillobejaranopleapr.pdf.

*United States v. Diego Alberto Ruiz Arollave,* **02-cr-714 (6) (SDTX):**

On May 13, 2008, Arrollave was extradited along with Mr. Mancuso. He pleaded guilty October 6, 2008 and was sentenced to 90-months on June 6, 2009. Defendant Ruiz Arollave was an AUC commander, leading the "Bloque Centaurus." He shared command with his brother and managed the sector that encompassed Colombia's capital, Bogota.

*United States v. Miguel Villarreal Archila aka "Salomón"*- **07-cr-00019 (WTH-PRL) (MDFL):**

Sentenced to 130-months, this defendant also arrived with other AUC defendants on May 13, 2008. Mr. Villarreal Archila was the head of the Atlantico Norte Block, operating out of the city of Barranquilla. He collected debts for drug traffickers and was involved in several homicides.

### III. RECENT CASES IN DISTRICT OF COLUMBIA

*Carlos Alberto Renteria,* **04-126 (EGS) (DC):**

Within the last months, one of the giants of drug trafficking was sentenced in the DC courthouse. Carlos Alberto "Beto" Renteria was sentenced to 102-months after providing substantial assistance to the government. Defendant Renteria's drug trafficking activity spanned decades; he was classified as "one of the leaders of the Norte Valle Cartel." In the government motion for tolling of the speedy trial clock, the government noted:

> The overt acts contained in the indictment allege that between approximately 1990 and 2004 the defendant was one of the leaders of the Norte Valle Cartel, **at one time the most powerful drug trafficking cartel in Colombia**, and one which was **responsible for exporting more than 500,000 kilograms of cocaine, worth more than $10 billion dollars**, from

6

Colombia to Mexico, and ultimately to the United States.

(Emphasis added). ECF Doc. 82, p.2, 04-cr-126 (EGS) (DC).

***United States v. Gabriel Puerta Parra,* 04-cr-60093 (WPD)(SDFL) / 06-20724-CR-WPD (SDFL) / 04-126 (EGS)(DC):**

Defendant Puerta Parra was a large-scale drug trafficker whose activity spanned decades. His activity sparked three cases in two federal jurisdictions including the District of Columbia. After a process of case-consolidation, including a District of Columbia case, a judge in the Southern District of Florida sentenced him to 135-months. This sentence was later reduced by Rule 35 to 72-months. Defendant Puerta Parra is described by the United States Department of State as:

> … a major investor in cocaine shipments, a provider of money laundering services to other Norte Valley cartel traffickers and members of the AUC, and was involved in the laundering of millions of dollars of drug proceeds between Colombia, Ecuador, Mexico, Vanuatu and the USA. The money laundering operations are diverse, highly compartmentalized and covert, using front companies, real estate investments, electronic wire transfers, money exchange houses, air cargo forwarders, and clandestine bulk money shipments. Numerous front companies are owned or owned in part by Puerta-Parra and key family members mainly in Colombia. He has created casa de cambios in Colombia, and several investment firms including agro-business/cattle companies. Puerta-Parra has co-invested in emerald mine companies and real properties in Colombia and Brazil as a way to launder drug proceeds.

*See* Captured / Reward Paid, U.S. Department of State, as viewed at: http://2001-2009.state.gov/p/inl/narc/rewards/39429.htm (last visited Nov. 20, 2013).

Both defendants, Puerta Parra and Renteria, were giants in the world of cocaine trafficking. Both were prosecuted by the office representing the United States in Mr. Mancuso's case, Narcotics & Dangerous Drug Section of the U.S. Department of Justice (NDDS). Accordingly, both sentences should and must be considered as the Court analyzes the potential for unwarranted sentence disparities. 18 U.S.C. § 3553 (a) (6).

*United States v. Phanor Arizabaleta,* **03-CR-331 (CKK)[1] (DC):**

      Also prosecuted by the NDDS office of DOJ, this defendant was described as the "Fifth Man" in the infamous Cali Cartel, responsible for 80% of the cocaine imported to the U.S. during the 80's and a portion of the 90's. The defendant was captured in Colombia on September 16, 2010, extradited to United States on June 25, 2011. This drug kingpin was sentenced and deported back to Colombia in March of 2012, after serving approximately 8-months in a United States jail.

      Arizabaleta's sentence, was also facing a long prison sentence in Colombia, a factor that influenced the court in imposing the 8 months sentence. News reports surrounding the defendants return to Colombia reported that a sentence of 20-years awaited this defendant upon his return to Colombia. To this day, he remains incarcerated in Colombia.

*United States v. Anayibe "Sonia" Valderama,* **03-CR-554 (JR) (DC):**

      After approximately six-weeks of trial, the defendant was convicted of conspiring to distribute cocaine intending or knowing that it would be unlawfully imported into the United States. One of the defendants, Anayibe Rojas Valderama, aka "Sonia," was alleged to have been a member of a United States designated terrorist organization, the Revolutionary Armed Forces of Colombia (FARC). At sentencing, the government, represented by NDDS, argued that the amount of cocaine attributable to each defendant was **"enormous"** and requested sentences in excess of forty (40) years. Also highlighted was the FARC's role as a terrorist organization and how drug trafficking was used to finance that war. "Sonia" was sentenced to 200-months after trial (16-years and 8-months).

*United States v. Osorio Ortega, et al.,* **02-CR-392 (RJL) (DC):**

This case involved a multi-ton cocaine conspiracy prosecuted by NDDS. Upon information and belief, all but two of the defendants cooperated and pled guilty before trial. Of the remaining two defendants, one was convicted after a very long jury trial and one pled guilty following entry of a mistrial. Upon information and belief, each of those defendants was also charged with conspiracy to distribute five (5) kilograms or more of cocaine, intending or knowing that it would be unlawfully imported into the United States. Those defendants were sentenced as follows:

---

[1] This case is sealed in Court records, but the information presented to the Court was widely reported in the media and learned from inmates detained with defendant Arizabaleta.

      Samuel Lopesierra   -   300 Months
                                                      (Guilty by jury – *no cooperation.*)
      Mario Osorio Ortega   -   132 Months
      Ruben Dario Cotes Gomez   -   120 Months
      * The remaining defendants served from 66-months down to home-detention.

***United States v. Miguel Angel "Mellizo" Mejia Munera, et al.,* 04-034 (JDB) (DC):**

      Defendant Mejia Munera was an AUC commander leading the "Bloque Arauca," one of the 37-AUC "bloques." He held and managed his "bloque" in identical fashion as Mr. Mancuso. Mejia Munera is charged with participating in a cocaine conspiracy and operating his AUC bloque as a tool for narco-trafficking. He is being prosecuted by NDDS and is now pending sentencing before Honorable John Bates. In previous sentences, for lower-level defendants, members of the Mejia Munera drug-trafficking organization and AUC bloque were sentenced from the 50-70-month range. These defendants included financiers and high ranking security personnel.

### IV. MANCUSO COOPERATION & COLOMBIAN CORRUPTION

***United States v. General Mauricio Santoyo,* 12-cr-217 (JCC) (EDVA):**

      Still described as the first case to charge, detain and imprison a Colombian general, the *Santoyo* case is a prime example of public corruption in the furtherance of narco-trafficking. As General of the Colombian National Police, and chief of security for then President Alvaro Uribe, Santoyo was implicated with several high-level drug traffickers and organizations. Mr. Mancuso spoke of General Santoyo early 2008 in his debriefings to Colombian and U.S. authorities. Eventually, the Eastern District of Virginia indicted the general. After traveling to the United States and turning himself in to authorities, he entered a plea of guilty and was sentenced to 13-years in 2012. Upon information and belief, General Santoyo is expected to benefit from a Rule 35 sentence reduction in the near future.

### V. ADDITIONAL COMPARATIVE CASES – WITH FOCUS ON TIME INCARCERATED & CONDUCT (DRUGS & ARMS)

1. ***United States v. Oscar Garcia Varela aka "Capachivo,"* 99-cr-0804 (CMA) (SDFL) -** The defendant was a large-scale cocaine trafficker responsible for the importation of thousands of kilos of cocaine into the United States and also responsible for directing the brutal murders of several persons, including a U.S. government informant. After a lengthy

trial, the jury reached a guilty verdict. At sentencing the government first argued that the appropriate guideline was a Level 48, criminal history category I, with an extrapolated sentencing range of 673 – 841-months. However, even in that situation, involving more drugs and with documented violence attributable to the defendant, the government requested a 720-month (60 year) sentence. Notwithstanding the government's request, the court in that case sentenced Varela-Garcia to 280-months, a sentence sufficient but not greater than necessary to comply with the basic aims of sentencing.

2. ***United States v. Bayron Jimenez Castaneda*, 09-CR-20166 (AJ)(SDFL)** – An AUC member and right- hand man to supreme AUC leader Carlos Castaño, responsible for importation of over 100-tons of cocaine into United States sentenced to 80-months after cooperation.

3. ***United States v. Wenceslado Caicedo Mosquera*, 05-CR-219 (JSM) (MDFL)** – This defendant was involved in multiple grisly murders and importation of o*ver 100-tons of cocaine into United States* initially sentenced to 168-months and it is rumored that a possible Rule 35 reduction is expected.

4. ***United States v. Victor Bout,* 09-cr-1002 (WHP)(SDNY)** – This defendant, sentenced to 25-years, was described as "…international arms trafficking enemy number one … arming some of the most violent conflicts around the globe" and "agreeing to provide a staggering number of military-grade weapons to an avowed terrorist organization committed to killing Americans." US Attorney, Preet Bhara. CNN Wire Staff, April 6, 2012, "Russian arms dealer Viktor Bout handed 25-year federal sentence," CNN Justice, April 6, 2012. Available at: http://www.cnn.com/2012/ 04/05/justice/ new-york- viktor-bout-case/.

5. ***United States v. Gabriel Villanueva*, 02-CR-1188 (JS) (EDNY)** – This defendant was the right-hand man to a cartel leader and responsible for multiple murders and hundreds of tons of cocaine imported into the United States. He was sentenced to 55-months after cooperation.

6. ***United States v. Ramon Orozco Mejia*, 04-CR-21054 (KMM) (SDFL)** – This defendant was responsible for the importation of over 50-tons of cocaine into United States. He was initially sentenced to 188-months, then reduced to 94-months after cooperation.

7. ***United States v. Olmes Duran Ibarguen*, 07-CR-194 (JSM) (MFLA)** – This defendant also led an organization's transportation and was responsible for importation of over 100-tons of cocaine into United States. He was sentenced to 80-months after cooperation.

8. ***United States v. Angel Cabaleiro Caicedo*, 07-CR-339 (TGW) (MDFL)** – This defendant led a drug trafficking organization's transportation and was responsible for the importation of over *50*-tons of cocaine into United States. He was sentenced to 60-months after cooperation.

## VI. CONCLUSION

As the Court can see from this brief survey of cases and recent sentences in this and other districts, the sentence called for by NDDS and by the government is unreasonable and extremely disparate. A review of similarly situated defendant, done pursuant to 18 U.S.C. § 3553 (a) (6), reveals the potential for disparity should the Court adopt the government's 261 month recommendation. Mr. Mancuso has provided the Court with ample evidence of cases involving drug trafficking, defendants that went to trial, defendants that pleaded guilty and cooperated and did not cooperate, cases involving terrorism and arms, as well as cases involving similarly or greater cocaine trafficking conspiracies.

Based upon the foregoing, the individuals mentioned by the government; Jimenez-Naranjo (alias Macaco), Murillo-Bejarano (alias Don Berna) and Vanoy-Murillo (Government's Memo at, p.4) are not an adequate point of comparison as they did not cooperate with the government as Mancuso has during the course of the last seven years.

**Respectfully submitted,**

/s/ Joaquin Perez
Joaquin Perez, Esq.
Counsel for Defendant
6780 Coral Way
Miami, Florida 33155
Tel: (305) 261-4000
Fax: (305) 662-4067
Fl. Bar No.: 335339
jplaw1@bellsouth.net

11

12

**CERTIFICATE OF SERVICE**

     **I HEREBY CERTIFY** that a true and correct copy of the foregoing was filed under seal this 25th day of March, 2015 and an electronic copy was sent to AUSA Paul Laymon, US Department of Justice.

                                                                    /s/ Joaquin Perez