UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 02-388-02 (ESH) |
| | : | |
| | : | |
| SALVATORE MANCUSO-GOMEZ | : | |
|  a/k/a "El Mono," | : | |
|  a/k/a "Santander Lozada," | : | |
|   Defendant. | : | |
| | : | |

**GOVERNMENT'S REPLY TO DEFENDANT'S RESPONSE TO THE GOVERNMENT'S MEMORANDUM OF RELEVANT CASES**

Comes the United States, by and through its attorneys, and replies to the defendant's response to the government's Memorandum of Relevant Cases.[1]

**I.   Introduction**

The defendant's response to the government's Memorandum of Relevant Cases demonstrates the challenge and limitation in trying to identify cases which can provide some guidance in sentencing the defendant. The defendant was a high ranking leader of an armed and violent international drug trafficking organization which was involved in sending tons of cocaine to the United States, for which the defendant and his organization made untold millions of dollars that funded the organization's plethora of illegal activities. Not surprisingly, there are relatively few others who can be considered in the same league as the defendant.   However, in his attempt to compare other cases to his own, the defendant has misstated or omitted key facts about some of the cases he offers as relevant to the defendant's sentence. Further, the defendant refers to national

---

[1] The government cross-references and adopts herein the factual history set out in the introduction to its previously filed Government's Memorandum of Relevant Cases.

1

cases in which the district courts granted motions for downward departure based, presumably, on a particular defendant's unique assistance.   Given that there is no meaningful way to compare and contrast the assistance provided by another defendant, and any disparity with the defendant's case would be warranted by the individual and unique assistance provided in each case, these cases should have no relevance to the defendant's case.

**II.   The defendant's list of relevant cases**

The requirement to look at other cases which could guide the determination of the defendant's sentence comes from Title 18, United States Code, Section 3553(a)(6), which provides that the District Court shall consider "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct."   On its face, Section 3553(a)(6) seeks to avoid *unwarranted* sentencing disparities among similarly situated defendants, recognizing that there will be warranted sentencing disparities. For example, the leader of a criminal scheme is not similarly situated to a co-defendant who was not a leader of the criminal scheme. *United States v. Koumbairia,* 501 Fed. Appx. 1, 2013 WL 5977656 (D.C.Cir. 2013).   Also, the unwarranted sentence disparity factor set out at Section 3553(a)(6) requires the District Court to avoid unwarranted sentence disparities between similarly situated defendants nationwide, and does not require the court to avoid sentencing disparities between co-defendants who are not similarly situated. *United States v. Balleza,* 613 F.3d 432, 435 (5th Cir. 2010) (sentence disparities between co-defendants who were convicted of different charges or who received departures for substantial assistance are not unwarranted sentence disparities); *United States v. Parker,* 462 F.3d 273, 277 (3rd Cir. 2006) (the primary goal of Congress in enacting 3553(a)(6) was to promote national uniformity in sentencing rather than uniformity among co-defendants in

the same case).    *Accord, United States v. Boscarino,* 437 F.3d 634, 638 (7th Cir. 2006); *United States v. Seligsohn,* 981 F.2d 1418, 1428 (3rd Cir. 1992); *United States v. Verduzco,* 558 Fed.Appx. 562, 568 (6th Cir. 2014); and *United States v. Esso,* 486 Fed. Appx. 200, 201-02 (2nd Cir. 2012). However, although Section 3553(a)(6) does not require district courts to consider sentencing disparity among co-defendants, it does not prohibit them from doing so. *Parker,* 462 F.3d at 277.

The defendant begins by asserting that a co-defendant's case is relevant to the defendant's sentencing, and then goes on to discuss the cases of other AUC commanders, recent cases indicted in the District of Columbia, a case from the Eastern District of Virginia, and many cases labeled "additional comparative cases."   A brief assessment of these cases reveals that few have any relevance to the defendant.

### A. Co-defendant Juan Carlos Sierra-Ramirz, a/k/a "Tuso"

The defendant describes co-defendant Sierra-Ramirez as the "leader and commander of the narcotics operations of the AUC." This is far from accurate. The record showed that the co-defendant Sierra-Ramirez was in fact a very significant drug trafficker tied to the AUC. However, unlike the defendant Mancuso, the co-defendant Sierra-Ramirez was not a leader in the AUC, was not a "commander" of the AUC, did not command armed or unarmed soldiers, did not control territory in Colombia, and did not have authority within the AUC to direct and collect protection payments from drug trafficking activity in the form of so called "taxes".   Also, there was no known acts of violence or murder attributed to the co-defendant. Colombian authorities even removed the co-defendant from the Justice and Peace program because they concluded the co-defendant was not a member of the AUC but was a drug trafficker who purchased membership in the AUC in hopes of receiving the benefits of demobilization.

Further, to the extent the co-defendant received any sentencing benefits, the unique and individual circumstances of his case would make impossible any meaningful comparison of the two cases. Thus, any sentencing disparity between the co-defendant and the defendant is warranted by the difference in their roles within the AUC and the unique circumstances which produced the co-defendant's sentence. Simply put, the co-defendant was not similarly situated to the defendant and there is no unwarranted sentence disparity between the defendant and the co-defendant.

### B.   AUC Commanders who were also extradited to the U.S.

The government and the defendant agree that the sentences handed down to several other key AUC leaders are relevant to the defendant's sentencing. Those leaders are block commander Carlos Jimenez-Naranjo (396 months), block commander Ramiro Vanoy (293 months confinement), and AUC "inspector general" Diego Murillo-Bejarno (375 months). These sentences, which recognize the need for the sentence imposed to reflect the seriousness of the offense, provide an appropriate starting point for assessing the proper sentence for the defendant. The government agrees that these sentences were not impacted by Section 5K1.1, U.S.S.G. or Title 18, United States Code, Section 3553(e). And because these sentences were not impacted by 5K or 3553(e) considerations, these sentences allow the District Court to better see that the government's recommendation of 263 months does not produce an unwarranted disparity among similarly situated defendants.    The government's post-5K1.1 sentencing recommendation of 263 months is 30 months less than Vanoy's sentence, 112 months less than Murillo's sentence, and 133 months less than Jimenez' sentence.    Had the government's sentencing recommendation for the defendant been greater than any of the sentences handed down to these (non-cooperating) similarly situated defendants, then perhaps defendant could argue that there was an unwarranted sentencing

disparity. But keeping in mind that these three defendants were subordinate to the defendant in the AUC's chain of command, the government's recommendation comports with 3553(a)(6) and is fair.

The defendant contends that the case involving Javier "Gordo" Lindo is relevant to the defendant's sentencing.   The government disagrees. Lindo was convicted of drug trafficking in the Southern District of Florida (case number 99-06153) and sentenced to 262 months confinement. Lindo was the financial manager for several para-military groups considered a part of the AUC.   Unlike the defendant Mancuso, Lindo was not an AUC commander, did not command armed soldiers, and did not have the other attributes of AUC leadership that were vested in Mancuso and the other commanders.   Lindo was removed by Colombian authorities from the Justice and Peace program because Lindo was deemed to have been merely a drug trafficker who falsely sought membership in the AUC in an effort to obtain legal benefits under the Justice and Peace process.

The defendant contends that the cases involving Diego Ruiz-Arroyave (4-02-cr-00714, SDTX) and Miguel Villareal-Archila, a/k/a "Salomo," (5:07-cr-00019, MDFL) are also relevant to the defendant's sentencing.   The government again disagrees.   Though both defendants were linked to the AUC, neither of the two was a key leader in the AUC and, unlike the defendant, neither of the two was at the highest level of AUC leadership. Villareal, identified in the Spanish language media in Colombia as an AUC member responsible for collecting taxes, was found guilty of drug trafficking and at sentencing was determined to be safety valve eligible, unlike the defendant. Ruiz-Arroyave was not convicted of drug trafficking, but instead pleaded guilty to providing material support to the AUC.   Ruiz-Arroyave was accused of attempting to acquire

Russian made anti-aircraft missiles and other weapons in exchange for cocaine, an offense which carries a maximum punishment of 15 years (Title 18, United States Code, Sections 2339(A) and (B)). Thus, neither Ruiz-Arroyave nor Villareal-Archila can be deemed to be similarly situated to the defendant, as the defendant played a much more significant command and policy role in the AUC, and additionally Ruiz-Arroyave, who was convicted of material support, was not found guilty of similar conduct.

### C.   Recent cases in the District of Columbia

The defendant erroneously contends that the case of Carlos Alberto Renteria is relevant to the defendant's sentencing. Because that case is still under seal before the Honorable U.S. District Court Judge Richard Roberts, the government will respond further in a separate under seal, *ex parte* filing.

The defendant contends that the cases of Gabriel Puerta Parra (135 months confinement) and Phanor Arizabaleta are relevant to the defendant's sentencing.   The government disagrees. Puerta Parra was a lawyer in Colombia who invested in drug loads and provided his legal services to launder money for the para-military organizations. Unlike the defendant Mancuso, Puerta Parra was not a leader of the AUC and not a commander of an armed and violent drug trafficking organization. Puerta Parra was not similarly situated to the defendant. Further, Arizabaleta was a drug trafficker associated with the Cali Cartel, a notorious drug trafficking organization located in Cali, Colombia, which once wielded great influence and power in Colombia. After being confined for less than a year in the United States, Arizabaleta was removed to Colombia, in part for serious health reasons, to face a Colombian sentence for trafficking. Though Arizabaleta was part of a violent international drug trafficking organization, the Cali Cartel, he was not a key leader of the

Cali Cartel, was not connected to the AUC, and was thus not similarly situated to the defendant.

Likewise, the cases of Anayibe "Sonia" Valderama (200 months) and Samuel Santander-Lopesierra (300 months) are not relevant to the defendant's sentencing. Both were significant drug traffickers convicted after jury trials in the District of Columbia. Valderama was convicted after a jury trial in case number 1:03-cr-00554 (JR) of conspiracy to distribute cocaine, knowing or intending the cocaine would be imported into the United States. Though Valderama was linked to the Colombian guerrilla organization known as the "FARC," which the government of the United States considers to be a violent and armed international drug trafficking and terrorist organization on par with the AUC, Valderama was considered at most to be a mid-level leader in the FARC. Lopesierra was convicted after a jury trial in case number 1:02-cr-00392 of drug trafficking and sentenced to 300 months confinement. Lopesierra was a prominent businessman who had been a city council member, state representative, and was a member of the Colombian Senate from 1994 to 1998. He was convicted for his role in distributing approximately 2000 kilograms of cocaine in 2001 and 2002, at least part of which he knew was imported into Puerto Rico. Lopesierra was not linked to the AUC, nor was Lopesierra linked to acts of violence. While both Valderama and Lopesierra were prominent drug traffickers, and arguably each played a key role in the conspiracies in which they were implicated, neither Valderama nor Lopesierra exercised the key leadership role that the defendant exercised in the AUC.

### D.   The case of General Mauricio Santoyo

Santoyo was a high ranking military official in Colombia who pleaded guilty to providing material support to a designated terrorist organization. As noted above, this offense carries a maximum punishment of 15 years. He was not convicted of drug trafficking and was not a member

7

of the AUC, and most clearly was not a high ranking leader of the AUC.   He is thus not similarly situated to the defendant because he was not found guilty of similar conduct.

### E. "Additional Comparative Cases"

The defendant lists seven additional cases from across the United States of drug traffickers who were sentenced for importing cocaine into the United States, and he also lists the case of one arms dealer who was convicted and sentenced in New York.   The arms dealer (Victor Bout) is not similarly situated to the defendant because the arms dealer was not found guilty of conduct similar to the defendant's conduct.

The remaining seven defendants were drug traffickers who apparently imported large quantities of cocaine into the United States. Only one of the seven, Bayron Jimenez Castaneda, is alleged to have been connected to the AUC. However, according to the defendant Mancuso, six of these seven assisted the United States and their sentences were reduced accordingly or will be reduced. Thus, there can be no unwarranted sentencing disparity involving those six defendants because any disparity would be warranted by the assistance provided by each of the defendants listed.

That leaves Oscar Garcia Varela, who was sentenced to 280 months after a jury in the Southern District of Florida convicted him of drug trafficking and other offenses. Garcia Varela was charged in the Southern District of Florida in case number 1:99-cr-00804 with drug trafficking, money laundering, conspiracy to obstruct justice, obstruction of justice by murder, conspiracy to commit murder, and murder with the intent to retaliate for providing information to law enforcement.   He was convicted of two counts of drug trafficking, conspiracy to launder

8

monetary instruments, obstruction of justice, conspiracy to retaliate against a witness by murder, and witness retaliation by murder, and sentenced to concurrent sentences of 120 months on drug trafficking money laundering, and 280 months for the obstruction and murder offenses. This case in particular demonstrates the challenge of attempting to compare cases. Garcia Varela was apparently a drug trafficker who became part of a scheme to kill an informant in Colombia. There were eight other co-defendants who were convicted and sentenced by the time Garcia Varela was sentenced, and their sentences ranged from 11 years to 45 years. Garcia Varela was 62 years of age when sentenced.    The district court judge in Florida assessed Garcia Varela's culpability, and no doubt mindful of the dictates of 3553(a)(6), sentenced the 62 year old Garcia Varela to a sentence midway between the high and low sentences handed out to the co-defendants. There is no indication that Garcia Varela was connected to the AUC, and it is clear that Garcia Varela was not a high ranking leader of the AUC. For at least this reason, he is not similarly situated to the defendant.    Beyond that, the District Court should reject the defendant's implicit, if not explicit, argument that the defendant, who was only convicted of drug trafficking, should be sentenced to substantially less than these bad actors who were sentenced to from 280 months to 45 years for murdering an informant. There is no unwarranted sentencing disparity between the defendant and the defendants in the informant murder case, and that case bears no relevance to the defendant's case.

### III. Conclusion

For the reasons outlined here and in its previously filed sentencing memorandum, of the defendants listed in the defendant's reply, only the cases of Ramiro Vanoy, Carlos Jimenez-Naranjo, and Diego Murillo-Bejarno are relevant to the sentencing of the defendant

Mancuso. As to all other defendants discussed by the defendant Mancuso, the defendants listed were not found guilty of similar conduct or any sentencing disparity was warranted by the individual facts of each case.

          Respectfully submitted,

          Arthur Wyatt
          Chief
          Narcotic and Dangerous Drug Section
          Criminal Division
          United States Department of Justice

          _____/s/_____
          By: Paul W. Laymon, Trial Attorney
          Narcotic and Dangerous Drug Section
          Criminal Division
          U.S. Department of Justice
          paul.laymon@usdoj.gov
          202-330-1400

## **CERTIFICATE OF SERVICE**

     A copy of this motion was mailed, via electronic mail, to counsel for defendant, Joaquin Perez, 6780 Coral Way, Miami, Florida, on April 13, 2015.

          _____/s/_____
          Paul W. Laymon