**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | |
| | : | |
| **v.** | : | **Criminal No. 02-388-02 (ESH)** |
| | : | |
| | : | |
| **SALVATORE MANCUSO-GOMEZ** | : | |
| **a/k/a "El Mono,"** | : | |
| **a/k/a "Santander Lozada,"** | : | |
| **Defendant.** | : | |
| | : | |

**<u>GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING MEMORANDA</u>**

Comes the United States, by and through its attorneys, and responds to the defendant's sentencing memoranda. In his Memorandum in Aid of Sentencing Made Pursuant to 18 U.S.C. Section 3553(a) Factors, the defendant argues that the District Court should "vary downward and mitigate his sentence based on the extraordinarily harsh prison conditions in Colombia." He also asserts that his "inhumane pre-sentence confinement" while at CTF and the Northern Neck Regional Jail merits consideration at sentencing. (Memorandum, pp. 18-19.) The defendant also requests a six month departure pursuant to *United States v. Smith*, 27 F.3d 649 (D.C. Cir. 1999). The requests are without merit and should be denied.

**<u>Credit for conditions of confinement</u>**

The defendant seeks a variance from the Guidelines range on the basis of his pretrial holding conditions in Colombia. A reduction in sentence based on pretrial confinement conditions is a "'highly infrequent' and extraordinary measure." *United States v. Sutton*, 973 F. Supp. 488, 495 (D.N.J. 1997); *see also United States v. Shah*, 263 F. Supp. 2d 10, 35 (D.D.C. 2003), *aff'd and remanded*, 453 F.3d 520 (D.C. Cir. 2006). The defendant has failed to support his argument that

a reduction in sentence is a warranted here on the basis of his pretrial custody in Colombia or at CTF or Northern Neck.

While presented as a variance argument, the treatment of pretrial holding conditions as a departure matter under the Guidelines and related case law is helpful to this analysis. While the Sentencing Guideline Manual stipulates that a sentencing court may grant a downward departure based on a factor which the Sentencing Commission did not consider when creating the Guidelines, *see* U.S.S.G. § 5K2.0 (quoting 18 U.S.C. § 3553(b)), pretrial conditions of confinement generally do not warrant a downward departure within the Guidelines framework. The Supreme Court has stated that a downward departure should not be permitted unless the facts of a particular case are "unusual enough for it to fall outside the heartland of cases in the Guideline." *Koon v. United States*, 518 U.S. 81, 98 (1996). Based on the *Koon* standard, a defendant must be subjected to treatment worse than that of other inmates at the pretrial prison to receive a downward departure. *United States v. Valdes*, No. 01-068-JJF, 2004 WL 234648, at *2 (D. Del. Feb. 2, 2004) ("Conditions of confinement which impact all defendants facing incarceration are insufficient to warrant a downward departure.") (citing *United States v. Washington*, 95-124-3, 1997 WL 327459, at *2-3 (E.D. Pa. June 12, 1997)); *United States v. Pachaco*, 67 F. Supp. 2d 495, 498 (E.D. Pa. 1999) (noting that "a defendant must demonstrate to the court [that] the conditions [of pretrial confinement] compare unfavorably to those suffered by other inmates" to receive a downward departure) (citing *United States v. Sutton*, 973 F. Supp. 488, 492-94 (D.N.J. 1997), *aff'd* 156 F.3d 1226 (3d Cir. 1998)); *United States v. Ogembe*, 41 F. Supp. 2d 567, 571 (E.D. Pa. 1999). Indeed, a defendant's case does not fall "outside the heartland" unless he is treated more severely than his fellow inmates. *Cf. Pachaco*, 67 F. Supp. 2d at 498.

Moreover, this standard applies even if the conditions of the pretrial prison do not meet the standards required at most federal facilities.

In addition to suffering a special harm, a defendant must offer specific evidence of this harm to receive a downward departure. Indeed, a lack of evidence regarding pretrial holding conditions is sufficient justification to deny a downward departure. *United States v. Dyck*, 334 F.3d 736, 742-43 (8th Cir. 2003) (refusing to grant a downward departure due to lack of evidence regarding conditions at the county jail); *Sutton*, 973 F. Supp. at 495 (refusing to grant a downward departure "[i]n light of the inadequacy of the record" regarding the general conditions of and the defendant's treatment at the pretrial confinement facility). Consequently, some documentation of the defendant's specific harm and the general prison conditions are necessary – albeit not sufficient – to merit a downward departure or, as argued in this case, a variance. *United States v. Mateo*, 299 F. Supp. 2d 201, 211-12 (S.D.N.Y. 2004) (granting a downward departure to a defendant who was sexually assaulted during pre-sentence confinement and received poor medical attention when giving birth); *United States v. Rodriguez*, 213 F. Supp. 2d 1298, 1303 (M.D. Ala. 2002) (granting a downward departure to a defendant who was raped during pre-sentence confinement); *United States v. Francis*, 129 F. Supp. 2d 612, 616-20 (S.D.N.Y. 2001) (providing substantial documentation of both the conditions at the Hudson County Correctional Center and of Francis' ailments that resulted from these conditions).

In recognizing the offender's pre-sentence conditions of confinement as permissible grounds to warrant downward departures, the courts have granted relief generally where the conditions in question are extreme to an exceptional degree and their severity *falls upon the defendant in some highly unique or disproportionate manner*. *See, e.g.*, *Rodriguez*, 213 F. Supp. 2d at 1303 (noting that "to fail to take this rape into account in [defendant's] sentence would mete

out a disproportionate punishment to her . . . ."); *Francis*, 129 F. Supp. 2d at 619 (finding that defendant had suffered "extraordinary stress and fear" under conditions at a state prison qualitatively different from those experienced by detainees of federal detention facilities). Based on these standards, the defendant should not receive a downward departure. While the defendant alleges that the conditions at the Colombian jails are deplorable and cites to a State Department report describing those conditions, poor prison conditions alone are not sufficient to necessitate a variance absent the showing of a specific harm. There simply is no reliable evidence before this Court documenting any of the conditions of which the defendant complains – the defendant does not even identify the prison in which he was held or describe its specific conditions. He offers only general reporting of the conditions at unspecified jails. The defendant also offers no reliable evidence or documentation of the conditions *he* specifically endured while in Colombian custody pending extradition, much less that *he* suffered disparate and worse treatment in relation to other inmates at the prison.

Moreover, because the Colombian facilities the defendant were housed in are foreign prisons, the United States Government has no control over the operation of and conditions at those facilities. Consequently, the government could not ensure or affect the conditions under which the defendant was held in that detention center. And although the defendant spent several years in custody in Colombia, his prolonged confinement there was largely a result of the AUC demobilization and the on-going attempts to negotiate the Justice and Peace process. The defendant was incarcerated by his own government for crimes committed in Colombia, presumably under the same or better conditions of incarceration as every other prisoner.

The defendant's pretrial incarceration at CTF and Northern Neck are also not a basis for a

variance. The only criticism the defendant can muster for his D.C. area confinement is that the conditions are less favorable than those available at federal facilities. Notably, in *Shah*, the Court stated that, "the D.C. Circuit has squarely held that an extended stay at the D.C. Jail does not prejudice a defendant: '[L]ittle weight need be given to [the defendant's] complaint about his extended stay at the D.C. Jail while he awaited sentencing in the absence of any evidence that he was a victim of untoward or unusual suffering as a result. To the contrary, it is well established that a prisoner does not have a right to be housed in a particular institution.'" *United States v.* Shah, 263 F. Supp. 2d 10, 35-36 (D.D.C. 2003), *aff'd and remanded*, 453 F.3d 520 (D.C. Cir. 2006) (citing *United States v. Yelverton*, 197 F.3d 531, 538 n. 9 (D.C.Cir.1999)).

In sum, the defendant has not established that either his foreign or domestic pretrial confinement conditions support a variance from the Guidelines.

***Smith* departure**

The defendant also requests a "departure" (or variance) from the Guideline range based on his status as a deportable alien, pursuant to *United States v. Smith,* 27 F.3d 649 (D.C. Cir. 1994). He offers no compelling reason for a departure based solely on his immigration status, and, indeed, no such departure is warranted in this case.

In *Smith,* the D.C. Circuit considered whether the mandatory Guidelines provided a basis for a downward departure. The *Smith* Court held that "a downward departure *may be appropriate* where defendant's status as a deportable alien is likely to cause a fortuitous increase in the severity of his sentence." *Smith*, 27 F.3d at 655 (italics added). Far from being mandatory, the downward departure in *Smith* was meant to be "highly infrequent." *Id.* Using *Smith* as guidance, reducing the defendant's sentence by any amount based on his immigration status is not reasonable.

First, as the *Smith* Court held, "[f]or a departure on such a basis to be reasonable the

difference in severity must be substantial and the sentencing court must have a high degree of confidence that it will in fact apply for a substantial portion of the defendant's sentence." *Id.* This, in turn, requires the defendant to show "that [his] deportable alien status . . . [is] an independent cause of a substantial increment in [the] severity" of his sentence. *Smith*, 27 F.3d at 655. The defense has not met this burden. For instance, it is not clear that in the absence of his deportable alien status the defendant would even be eligible for placement in a minimum security prison or camp for a substantial part of his sentence, since the nature of his drug offense would subject him to a "greatest severity" or "moderate severity" offense determination during the Bureau of Prisons classification process. *See* Federal Bureau of Prisons Program Statement ("BOP P.S.") P5100.08 ("Inmate Security Designation and Custody Classification"), dated September 12, 2006, at Appendix A at 1, 3.

This difficulty in ascribing "restrictive" facility or program determinations to one's deportable alien status in the BOP classification process was noted by the *Smith* Court and suggests why the Court did not hold that the departure must apply to all deportable alien defendants. The Court stated:

> The range of factors that the Bureau may consider in its assignments is almost illimitable, . . . . if deportable aliens who are ineligible for minimum security facilities are not so very different from U.S. citizens who are typically assigned to higher security institutions, then it might be hard to say that their status *alone* has caused an increase in severity.

*Id.* (italics in original). Under defendant's approach, all foreign citizens would receive beneficial treatment for sentencing purposes, even if their crimes were drug trafficking or terrorism crimes directed at the United States. This is unreasonable and not in keeping with the Circuit's directive in *Smith* that the departure apply infrequently. *Id.* The D.C. Circuit has continued to recognize that

the *Smith* departure is not to be applied automatically. *See, e.g., United States v. Brodie*, 524 F.3d 259 (D.C. Cir. 2008); *United States v. Olivares*, 473 F.3d 1224 (D.C. Cir. 2006); *United States v. Palacios*, 111 F.3d 963 (D.C. Cir. 1994). Because the defendant has not demonstrated that he will be subject to increased severity in his confinement, or that any difference in the severity of his sentence will be based solely on his alien status, a *Smith* departure is unwarranted.

Second, even if a difference in the severity of his sentence attributed to his deportable alien status is substantial, the *Smith* Court emphasized that such a finding, standing alone, was insufficient. The Court firmly stated:

> [W]e do not mean to suggest that a departure is in order whenever a factor unrelated to a prisoner's just deserts may affect the severity of his confinement. . . . . [E]ven a court confident that the [deportable alien] status will lead to worse conditions should depart only when persuaded that the greater severity is *undeserved*.

*Smith*, 27 F.3d 649 (italics added); *see also United States v. Olivares,* 473 F.3d 1224, 1231 (D.C. Cir. 2006) (quoting *Smith*, 27 F.3d at 655). Notably, the Court "express[ed] no opinion on whether a departure [was] appropriate" in that case, and remanded the matter for resentencing. *Smith*, 27 F.3d at 656. In this case, the only clearly demonstrated "greater severity" imposed on the defendant by not granting the *Smith* departure is six months additional incarceration time. Compared with the conduct he engaged in, the additional six months is appropriate. .

Respectfully submitted,

Arthur Wyatt
Chief
Narcotic and Dangerous Drug Section
Criminal Division
United States Department of Justice

________/s/____________________
By: Paul W. Laymon, Trial Attorney
Narcotic and Dangerous Drug Section
Criminal Division

U.S. Department of Justice
paul.laymon@usdoj.gov
202-330-1400

**CERTIFICATE OF SERVICE**

A copy of this motion was mailed, via electronic mail, to counsel for defendant, Joaquin Perez, 6780 Coral Way, Miami, Florida, on April 13, 2015. .

______/s/_______________
Paul W. Laymon